IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MILTON R. ANDERSON, | |
| Plaintiff, | |
| v. | No. 04 C 3800 |
| FOLLETT HIGHER EDUCATION GROUP, | Judge: Pallmeyer |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

Defendant, Follett Higher Education Group ("Follett"), submits this Memorandum of Law in support of its Motion for Summary Judgment.

## I.  INTRODUCTION

Plaintiff, Milton Anderson, admits that as Store Manager of Follett's bookstore at Chicago State University he missed deadlines, his paperwork was improperly completed and untimely, he failed to properly discipline employees, he yelled at employees, he had a confrontation with a loss prevention manager, his store's accounts receivable were past due, he missed conference calls, he forgot to submit mandatory agendas and meeting summaries, he failed to follow the call-in procedure when absent, he was not always present on the sales floor, he wore ripped clothes and slept at work.  He admits receiving substandard performance evaluations and progressive discipline because of these behaviors and others.  Despite these warnings, Plaintiff admits he continued at least some of the behaviors.  As a result, on September 17, 2002, Follett legitimately terminated Plaintiff for unacceptable performance.

Nevertheless, Plaintiff filed this lawsuit alleging that Follett discriminated against him because of his race (black) and retaliated against him for complaining about discrimination in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq*. and 42 U.S.C. §1981. Ultimately, Plaintiff bears the burden of providing the cold, hard facts to create a material issue of fact to avoid summary judgment. He cannot.

Specifically, Plaintiff's race claim fails because he cannot establish a *prima facie* case of discrimination. It is undisputed that Plaintiff was not performing his job to the satisfaction of his managers at the time of his probation or termination, and he points to no other similarly situated white employees who were treated more favorably. Nor can Plaintiff demonstrate pretext. Undisputed record evidence shows that Follett had a legitimate, nondiscriminatory reason for terminating Plaintiff – poor work performance - and there is not a shred of probative evidence that his race had anything to do with it. What Plaintiff does point to in support of his claims are trivial unpleasantries associated with work or other non-race related matters.

Plaintiff fares no better on his retaliation claim because again he cannot establish a *prima face* case. Plaintiff never engaged in statutorily protected activity, and even if he did, he can show no connection between that conduct and his termination.

For these reasons, more fully explained below, Follett is entitled to judgment as a matter of law on Plaintiff's claims.

## II.    THE SUMMARY JUDGMENT STANDARD

Summary judgment is warranted if "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1139 (7th Cir. 1997); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). Summary judgment should be granted if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 479 (7th Cir. 1996). The nonmoving party must come forward with

"specific facts showing that there is a genuine issue for trial." *Doe*, 42 F.3d at 443 (citation and internal quotes omitted). The court is "not required to draw every conceivable inference from the record [in favor of the non-movant] . . . only reasonable ones." *Id.*

Here, Plaintiff cannot establish any "genuine issue of material facts" warranting a trial in this matter.

## III.   FOLLETT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS.

### A.   Plaintiff Failed To Establish A *Prima Facie* Case Of Race Discrimination.

To prove that he was terminated because of his race Plaintiff must either offer direct evidence of discriminatory intent or circumstantial evidence under the *McDonnell Douglas* burden shifting method. *See Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999), *cert. denied,* 530 U.S. 1204 (2000). The burdens of proof under Title VII and Section 1981 are the same and Follett, therefore, treats Plaintiff's Title VII and Section 1981 claims together. *See id.*

"Direct evidence" is composed of only the most blatant remarks, whose intent can be none other than to discriminate on the basis of some impermissible factor. *See Jackson v. Chicago Firefighters Union*, Case No. 99 C 1651, 2001 WL 726992 (N.D. Ill. June 27, 2001) (attached as Exhibit W to Defendant's Appendix in Support of Motion for Summary Judgment). Plaintiff claims here that Bob Scholl commented to him that he would fire Plaintiff if he did not perform, told him to get his "ass" back in a meeting, and told him not to be late (Facts ¶¶25, 27). Plaintiff also alleges that Follett President Tom Christopher sent him a letter that contained a typo referring to Plaintiff as "Eileen" in the body of the text (which Plaintiff admits could have been a simple mistake) (Facts ¶60).

These comments, on their face, are not racial. *See Trask v. General Elec*. Co., 207 F.Supp.2d 843 (N.D. Ill. 2002) (statement that "yes, you sure may be in trouble" was not direct evidence of race discrimination); *Porter v. State of Illinois*, 987 F.Supp. 667, 674 (N.D. Ill. 1997) (manager's comment that she "had nothing do with the disciplinary proceeding against employee" made no mention of employee's race was not direct evidence). Indeed, Plaintiff admits he never heard Scholl make a racial comment, and Scholl was not hired by Follett until March 1999, almost three years after Plaintiff claims Scholl made the first comment (Facts ¶¶26, 27). Because Plaintiff has nothing "even remotely resembling the proverbial 'smoking gun'" under the direct method, he must proceed circumstantially. *See Richardson v. Chicago Transit Auth.*, 328 F. Supp. 2d 870, 873 (N.D. Ill. 2004). Moreover, these alleged comments have no probative value to the circumstantial case because they are not racial nor are they directly linked to Plaintiff's termination in subject or in time. *See Traylor v. Brown*, 295 F.3d 783, 788-89 (7th Cir. 2002) (stray remarks by a non-decisionmaker are not evidence of discrimination).

To establish a *prima facie* case of discrimination under *McDonnell Douglas*, Plaintiff must show that (i) he belongs to a protected class (ii) he was meeting Follett's legitimate job expectations (iii) he suffered an adverse employment action; and (iv) Follett treated similarly-situated employees outside his protected class more favorably. *See, e.g., Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978-79 (7th Cir. 2004). If Plaintiff can meet that burden, Follett must articulate a non-discriminatory reason for its action. *See id*. The burden then returns to Plaintiff to show that Follett's reason is pretextual. *See id*. At all times, Plaintiff retains the ultimate burden of showing intentional race-based discrimination and to survive summary judgment, he must show that a reasonable fact-finder could find in his favor on that issue. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1171 (7th Cir. 1997).

1.      **Plaintiff Was Not Satisfactorily Performing His Job.**

At the outset, Plaintiff cannot establish the second *prima facie* element that he was meeting Follett's legitimate expectations. It is undisputed that Plaintiff had serious performance problems.  Specifically, Plaintiff admits the following:

- Even before coming to Chicago State, he had performance problems at the Virginia State Bookstore (Pl. Dep. 86). Plaintiff's paperwork was poor, he incurred late fees, he did not conduct meetings with his employees, he missed his sales budget, and had problems developing employees in key positions. The store was often in disarray, and Regional Manager Vaughan was right to be concerned.  Even after Plaintiff was warned, he did not correct these issues (Facts ¶¶ 29-37).

- At Chicago State, he did not always complete paperwork in a timely manner (even after he was warned)  (Facts ¶¶46, 49).

- He was not always present on the sales floor (even after he was warned) (Facts ¶¶46, 49).

- He may have worn ripped clothing to work (Facts ¶47).

- He may have dozed off while working (Facts ¶48).

- He yelled at employees (Facts ¶51).

- He missed deadlines (Facts ¶53).

- He failed to discipline employees (Facts ¶53).

- He had a confrontation with a loss prevention manager (Facts ¶53).

- Accounts receivable were past due (Facts ¶53).

- He missed conference calls (Facts ¶53).

- He forgot to submit his mandatory agendas and meeting summaries (Facts ¶57).

- He failed to follow the call-in procedure when he was absent (Facts ¶57).

These and other uncorrected performance issues led to substandard performance reviews for 2001 and 2002, a written warning in 2001, performance probation in 2002, and ultimately Plaintiff's termination (Facts ¶¶45-61).  Based on all these facts – all undisputed – no reasonable jury could find that Plaintiff was meeting Follett's legitimate performance expectations at the time of his probation or termination and he cannot make his *prima facie* showing.  As such, summary judgment should be granted in favor of Follett.

### 2. Plaintiff Cannot Show That Similarly Situated Employees Were Treated More Favorably.

Plaintiff cannot satisfy the fourth element of his *prima facie* case either.  Here, Plaintiff has identified <u>no</u> comparators – <u>no</u> similarly situated white employees who were guilty of the same or similar misconduct yet escaped probation or termination.

Although Plaintiff points to certain white Store Managers (Chris Croson, Rebecca Birch, Brenda Butler, Mark Taylor, Jeffrey Summers, Walter Hughes, Kryss Holland, and Susan Southard) and a black Store Manager (Adrienne Farris), as having received higher performance ratings from Regional Manager Humanicki, he presents no evidence that any of these individuals were similarly situated (Facts ¶66).  In fact, they are not similarly situated because most managed stores with a different sales volume (Facts ¶69).  For example, Plaintiff managed an A store, while Butler, Taylor and Summers managed B level stores; Holland, Hughes and Farris managed C stores; and Southard managed a D store (Facts ¶69).  Birch's store had a higher sales volume than Chicago State (Facts ¶69).

Most significantly, there is no evidence that these individuals engaged in poor performance to the varied extent or severity Plaintiff did (Facts ¶68).  Their performance reviews for the relevant time period of 2000-2003, already in Plaintiff's possession, certainly do not reflect any similar behavior and Plaintiff cannot present such evidence (Facts ¶68).  Plaintiff

further admits that he knows nothing about the experience, training or education of any of these other store managers or the specifics of their particular stores (Facts ¶69). Simply stated, Plaintiff has no evidence that their higher performance ratings were not warranted. And, Croson received a below standard rating, and Hughes received a minimally standard rating from Humanicki (Facts ¶67). Finally, Farris is black (Facts ¶66).

As a result, Plaintiff cannot meet his *prima facie* burden and summary judgment should be granted for Follett.

### 3. Plaintiff Cannot Establish Pretext.

Even assuming for purposes of this motion only that Plaintiff could establish a *prima facie* case, no fact finder could reasonably conclude on the undisputed record facts that Follett's reason for putting him on probation and terminating him (his poor performance and repeated failure to improve) was a pretext for race discrimination. Pretext in discrimination law means "more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Richter v. Hook-SuperRx, Inc.*, 142 F.3d 1024, 1029-30 (7th Cir. 1998). The court does not evaluate whether the employer's reason was wise, fair or correct, but rather whether it was honestly believed. *See Giannopoulous v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410-11 (7th Cir. 1997).

There is simply no evidence that Follett management disciplined or terminated Plaintiff for anything other than the honest belief that his performance was poor and he failed to improve. Plaintiff's contention actually flies in the face of his own admission that Humanicki disciplined him leading up to his termination (for the same reasons he was ultimately terminated) because she believed his performance was poor. Plaintiff testified that:

> Q: Do you know why you were issued such a low [appraisal] rating
> for 2001?

A: Because that's what [Humanicki] felt (Pl. Dep. 156-157).

* * *

Q: Do you know why [Humanicki] issued you a below standard rating for 2002?

A: I guess that's the way she felt (Pl. Dep. 169-170).

On this record, no reasonable fact finder could conclude that Follett's articulated reason for the probation and termination was a pretext for discrimination. The bottom line is that Plaintiff's performance was poor, he received low performance reviews, written discipline, was placed on probation and finally terminated because he did not perform to the reasonable expectations of the Company. His mere opinion that it was "unfair" or his disagreement with the stated reason, with nothing more, is not enough to create an issue of fact to defeat summary judgment. *See Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001) (summary judgment for employer where plaintiff's own opinion that he was performing his job satisfactorily, without more, is not enough).

Further, Humanicki terminated other white managers, including Southard and Puera (Facts ¶¶71, 72).

Moreover, Plaintiff's low performance ratings and warnings do not amount to material adverse actions as a matter of law and are not actionable themselves. *See e.g. Haywood v. Lucent Technologies*, 323 F.3d 524, 352 (7th Cir. 2003) (summary judgment for employer where uncertainty experienced while waiting for a transfer and negative performance evaluations were not considered adverse actions); *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 654 (7th Cir. 2001) (summary judgment for employer where a warning is not considered an adverse action).

In any event, the relevant inquiry is not whether Follett's decision was wise or correct, but whether it was free of discriminatory bias. *See Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000). It is well settled in this Circuit that the courts do not act as super personnel departments to review employers' personnel decisions. *See Wells v. Unisource Worldwide Inc.,* 289 F.3d 1001, 1007 (7th Cir. 2002). Therefore, summary judgment is proper.

**a.**     **Plaintiff Has No Other Evidence Of Pretext.**

Although Plaintiff's Complaint and underlying charge do not contain any such allegations, Plaintiff testified to certain isolated occurrences over his career that he felt were discriminatory or possible evidence of discriminatory motive. He says he was treated unfairly because of his race: by Humanicki because she did not approve a two-week vacation, hired a black employee Plaintiff disliked, and let other managers stay in hotel rooms for regional meetings; because he did not receive fair salary increases; and because he was transferred from store to store (Facts ¶58).

As a preliminary matter, Plaintiff's claims about Humanicki do not constitute actionable adverse actions. Under the Seventh Circuit's well-settled standard, being denied a two-week vacation, the hiring of Farris and being denied a hotel room are not material adverse actions; instead they are examples of trivial unpleasantries associated with working. *See Rhodes v. IDOT,* 243 F.Supp.2d 810, 818 (N.D. Ill. 2003) (summary judgment for employer where temporary assignment of undesirable duties does not constitute an adverse action, especially where those duties are part of the employee's job description); *Campbell v. Henderson*, Case No. 00 C 6837, 2002 WL 1732361 (N.D. Ill. July 26, 2002)(Judge Pallmeyer)(denial of a vacation request is not a material loss of benefits and therefore not an adverse action) (attached as Exhibit V to Defendant's Appendix in Support of Motion for Summary Judgment).

As to pay increases and relocation, Plaintiff admitted that he did not suffer any material adverse action in these respects because he testified that he received annual increases throughout his employment, and that he knew of no one who received a larger raise.  He admitted that any relocation was either a lateral move with the same or better pay or a promotion with an increase in pay (Facts ¶¶7-9).  Moreover, to the extent these events occurred prior to December 18, 2001 (300 days prior to the date he filed his charge), they are time-barred as to Title VII.  42 U.S.C. 2000e-5(e)(1); *Sharp v. United Airlines, Inc.,* 236 F.3d 368, 372 (7th Cir. 2001) (any acts which occurred more than 300 days prior to the filing of plaintiff's EEOC charge are time-barred).

Further, as to pay and relocation, Plaintiff cannot identify any similarly situated, better treated individuals outside his protected class.  Instead, without any record evidence, Plaintiff claims that Stephan Baine, the previous Store Manager at Chicago State University Bookstore, made more money than him (Facts ¶63).  Stephan Baine, however, is black (Facts ¶63).

In addition, Plaintiff claims that Steve Pribyl, Senior Vice President, Director of Retail Operations, and Regional Manager Lynne Vaughan (now Director of University of Florida Bookstore) make more money and were not transferred as often (Facts ¶64), but they are not similarly situated because both were in positions higher than Plaintiff at all times during his employment (Facts ¶64).  Further, Plaintiff only assumes that they make more money (Facts ¶64).  Indeed, Plaintiff admits that he does not know of anyone else that received a greater wage increase (Facts ¶65).  And, it is not uncommon for Store Managers and other management level employees to be transferred locally or throughout the country as they advance within the Company or as business needs dictate (Facts ¶3).

Consequently, Plaintiff's issues with Humanicki's treatment, his relocation and pay are neither evidence of pretext nor actionable.  Thus, summary judgment is appropriate.

In sum, Follett's proffered reason for Plaintiff's termination unequivocally meets the test of being one that might motivate a reasonable employer. Plaintiff, on the other hand, has failed to meet his evidentiary burden to prove pretext, or even create a genuine issue of material fact as to pretext, and Follett is entitled to summary judgment.

B.    **Plaintiff's Retaliation Claim Fails.**

Plaintiff alleges he was retaliated against while he worked at the Chicago State University Bookstore because he complained "sometime before 1996" that a non-Follett employee was a racist, and also because of his conversations at Chicago State with Jennie Ward Robinson and Audrey Southard in 2000 (Facts ¶¶21, 41). As with his discrimination claim, Plaintiff has available two methods of proving retaliation.

Under the direct method Plaintiff must provide "direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that he engaged in protected activity (filing a charge of discrimination) and as a result suffered the materially adverse employment action of which he complains. If the evidence is uncontradicted, the plaintiff is entitled to summary judgment." *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). In a claim involving allegations of retaliation, the direct method essentially requires direct evidence "that, if believed by the trier of fact would prove [discrimination] 'without reliance on inference or presumption.'" *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (citing *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001)). Said differently, direct evidence "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). In this case there is no such admission is not present in the present case, so Plaintiff must proceed under the indirect method.

Under the indirect method, Plaintiff must establish that: (i) he engaged in statutorily protected activity; (ii) he was performing his job according to Follett's legitimate expectations; (iii) despite his satisfactory performance, he suffered an adverse employment action; and (iv) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Stone*, 281 F.3d at 644. If such a *prima facie* case of discrimination is established, the defendant bears the burden of establishing "unrebutted evidence of a noninvidious reason for the adverse action." *Id*.

Plaintiff cannot make out a *prima facie* case because he cannot show that he engaged in statutorily protected activity, that he was meeting Follett's legitimate job expectations, that he suffered an adverse action (with respect to anything other than possibly probation and termination) or that similarly situated employees who did not engage in statutorily protected activity were treated better.

### 1. Plaintiff Did Not Engage In Statutorily Protected Activity.

Plaintiff did not complain as defined by the law. "The first element of the *prima facie* case requires that plaintiff oppose conduct prohibited by the Title VII, or at a minimum, that [he] had a reasonable belief that [he] was challenging such conduct." *Marting v. Crawford & Co.*, 203 F. Supp. 2d 958, 970 (N.D. Ill. 2002). The Seventh Circuit in *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 706-07 (7th Cir. 2000), explained:

> That means, for example, that even if the degree of discrimination does not reach a level where it affects the terms and conditions of employment, if the employee complains and the employee fires him because of this complaint, the retaliation claim could still be valid. But the complaint must involve discrimination that is prohibited by Title VII. The plaintiff must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII.

To be protected, therefore, "the employee's opposition *either* must be directed at an actual unlawful employment practice or must be directed at a practice that the employee reasonably believes is an unlawful *employment* practice." *Cass v. American Prop., Inc.*, 861 F. Supp. 55, 58 (N.D. Ill. 1994) (emphasis in original).

Plaintiff retaliation claim is partly based on his allegation that "sometime before 1996" he told his managers McKita and Pribyl that Michael Durnil (a Roosevelt University employee and Plaintiff's campus contact) was a racist (Facts ¶21). Accusing a non-Follett employee of being a "racist" does not constitute statutorily protected activity because the accusation was not directed at any Company employment practice that was, or could reasonably be viewed as unlawful. Completely eviscerating any retaliation claim in this regard is the fact that Durnil was not even a Follett employee; Plaintiff testified the he thought manager McKita took his side; and in any event the incident occurred at least six years prior to Plaintiff's termination (Facts ¶22).

Plaintiff also claims that he was retaliated against for talking to Jennie Ward Robinson and Audrey Southard in 2000. Plaintiff's claim, however, is belied by the fact that he admits he never complained to Robinson (Facts ¶42). Instead, he merely told her that he wanted to get promoted; that he did not believe there were black employees in "certain positions;" that Bob Scholl allegedly made comment to him when he was at Virginia State; that Humanicki would not let him take a requested two-week vacation; that his bookkeeper at Roosevelt University was terminated; that other managers had complained about getting their "just due" and that he had served on Follett's Diversity Council (Facts ¶41). He further admits that when Audrey Southard, Senior Vice President, Human Resources, talked to him about his conversation with Robinson, he did not complain to her either (Facts ¶43). Plaintiff only repeated to Southard the same things he told Robinson and also that he thought Durnil (at least four years prior) was a racist (Facts

¶43).  Plaintiff admits he never complained to anyone at Follett about race discrimination (Facts ¶44).  Nor did he have any conversations similar to those with Robinson and Southard thereafter. Therefore, Plaintiff's retaliation claim fails because he never engaged in protected activity.

        2.       **Plaintiff Cannot Establish The Other Elements Of His _Prima Facie_ Case.**

Finally, as set forth in the preceding sections, Plaintiff cannot show he was satisfactorily performing his job or that he suffered any adverse action (other than possibly the probation and his termination).  Nor has he identified any similarly situated comparators who were treated better.  Further, more than two years passed from Plaintiff's discussions with Robinson and Southard until his termination _See Haywood_, 323 F.3d at 532 (one year between time plaintiff complained and termination did not support inference of causation).  Accordingly, Follett is entitled to summary judgment on Plaintiff's retaliation claim.

## IV.    CONCLUSION

Follett had a legitimate reason to discipline and terminate Plaintiff – his performance was admittedly substandard and he failed to improve after repeated progressive counseling.  Plaintiff has not, and cannot, show that Follett had a discriminatory or retaliatory motive.  Based on the foregoing, Plaintiff's claims are insufficient as a matter of law to raise a genuine issue of material fact warranting a trial in this matter.  Accordingly, Follett respectfully requests that this Court grant summary judgment in its favor on all of Plaintiff's claims.

Respectfully submitted,

FOLLETT HIGHER EDUCATION GROUP

By:  s/ Angela C. Pavlatos
      One of Its Attorneys

Edward C. Jepson, Jr.
Angela C. Pavlatos
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601
(312) 609-7500
Firm ID No. 90839

Dated:  March 8, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MILTON R. ANDERSON,

               Plaintiff,

v.

FOLLETT HIGHER EDUCATION GROUP,

               Defendant.

No. 04 C 3800

Judge:  Pallmeyer

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that true and correct copies of the foregoing Memorandum in Support of Motion for Summary Judgment were served on:

| | |
|---|---|
| Milton R. Anderson | Edward T. Stein |
| 7818 S. Euclid Avenue, Apt. 1 | Law Offices of Edward T. Stein |
| Chicago, Illinois  60649 | 200 S. Michigan Ave., Suite 1240 |
| | Chicago, IL  60604 |

by depositing the same in the U.S. mail, first-class postage prepaid, at 222 North LaSalle Street,

Chicago, Illinois 60601-1003 by 5:00 p.m. on March 8, 2006.

               _____s/ Angela C. Pavlatos_____